JUNE 1821.

Hughes
vs
Milly

of *Ferris*, and *Ferris* honoured the bill. The guarantee of *Foote's* debt constituted an essential part of the proposed contract in *Walsh's* letter, it was assented to by *Ferris*, and the payment of the bill of exchange consummated the contract. The court are therefore of opinion, that the construction given to those letters by the court below is correct, and their judgment is affirmed.

CHASE, Ch. J. dissented.

JUDGMENT AFFIRMED.

---

COURT OF APPEALS, JUNE TERM, 1821.

HUGHES *vs.* NEGRO MILLY, *et. al.*

M, by her will in 1776, bequeathed to P a negro girl, named A,(the ancestor of the petitioners, then 15 years of age.) until she should arrive to the age of 21, and that he should manumit her immediately after the death of M, so that her freedom might be secured to her at the age of 21. M devised the residue of her estate to S, and died in 1786 S administered on her estate, and in 1819, by deed, he manumitted the petitioners, the descendants of A, born after the death of the testatrix, stating in his deed that he had neglected to do so —Held that they were entitled to freedom.

Under the act of 1752 ch. 1, manumission by last will, was effectual to give freedom to slave, if not made during the last sickness of the testator

APPEAL from *Harford* county court, on a petition for freedom filed by the appellees. At the trial the petitioners offered evidence, that *Margaret Coale* being possessed of a negro girl called *Prina*, aged fifteen years, made, on the 23d of May 1776, her last will and testament in writing, wherein among other bequests she bequeathed as follows, viz. 1st. "I give and bequeath unto my son, *Philip Coale*, my negro girl named *Prina*, until she arrives to the age of twenty-one years, being at this time about fifteen years of age, and I do order him, that immediately after my decease he manumit her, and her posterity, so that their freedom may be secured to them at the age of twenty-one years." 3d. "I give and bequeath unto my son, *Samuel Coale*, all the remainder part of my estate after my son *Philip*, and my daughter *Sarah*, hath received their legacies as above," &c. That *Margaret Coale*, died in the year 1786. and that *Samuel Coale*, her son, one of the legatees mentioned in the said will, took out letters of administration, with the will annexed, on the estate of the said *Margaret Coale*, his mother. And on the 3d of March 1819, executed a deed of manumission to the petitioners, as follows, viz. "Whereas my mother, *Margaret Coale*, in her last will and testament, commanded my brother, *Philip Coale*, to secure by manumission the freedom of her slave *Prina*, and her offspring, which command the said *Philip* neglected to execute; and whereas by a subsequent clause of the same will, (through the said *Philip's* omitting to execute the said manumission,) the said *Prina*, and her

offspring, became my property, being a part of the resi-
due of my mother's estate bequeathed to me by the said
will; therefore, in conformity to my mother's wish towards
her slaves, as well as to my own feelings of justice towards
members of the human family, I hereby manumit, and for
ever set free, *Milly*, (daughter of *Prina*,) and her children,
*Washington* and *Hannah; Hannah* (daughter of *Prina*,)
and her children *Henry, Joe* and *Susan; Susan*, (daughter
of *Prina*,) and her daughter *Betsey*, and *Fanny* daughter
of *Sally*, and grand-daughter of *Prina*." &c. That the peti-
tioners *Milly, Hannah* and *Susan*, stated in the petition to
be mothers, are the daughters of *Prina*, and were born af-
ter the death of *Margaret Coale*, and that the petitioners,
*Hannah* and *Washington*, are the children of *Milly*, and
that the petitioners, *Henry, Joseph* and *Susan*, are the chil-
dren of *Hannah*, the daughter of *Prina*, and that the pe-
titioner *Betty*, is the child of *Susan*, daughter of *Prina*,
and that the petitioner *Fanny* is the daughter of *Sarah*,
who was the daughter of *Prina*, which said *Sarah* was
born after the death of *Margaret Coale*. The petitioners
then moved the court to direct the jury, that if they be-
lieved the foregoing testimony, they must find a verdict for
the petitioners; which opinion and direction the court,
[*Dorsey*, Ch. J.] gave to the jury. The defendant ex-
cepted; and the verdict and judgment being for the peti-
tioners, the defendant appealed to this court.

The cause was argued before BUCHANAN, EARLE, JOHN-
SON, and MARTIN, J.

*Taney*, for the appellant, contended—1. That under the
bequest to *Philip Coale* the petitioner's ancestor was be-
queathed absolutely to him, and no right to her could pass
to *Samuel Coale* under the bequest to him. He cited
*Goodtitle vs. Otway*, 2 *Wils* 6. 2. That under the act of
1752, *ch.* 1, no will could be made to give freedom to
slaves.

*Raymond* and *R. Johnson*, for the appellees, stated that
the claim of the petitioners to freedom was on two grounds.
1. Under the will of Mrs. *Coale;* and 2. Under the deed
of manumission executed by *Samuel Coale*. They con-
tended, 1. That an administrator might manumit the
slaves of the intestate. 2. That when the testatrix died,
the time had elapsed when *Philip* could take under the

bequest to him, that it was a lapsed bequest, and the slaves passed to *Samuel* under the bequest to him. 3. That manumission by will was not prohibited by the act of 1752, *ch.* 1, unless made during the last sickness of the testatrix. 4. That as *Philip* could not take the slaves, they passed to *Samuel*, who in due form manumitted them. That the bequest to *Philip* was in trust, which trust devolved upon *Samuel* to execute.

THE COURT OF APPEALS *affirmed* the judgment of the county court.

## COURT OF APPEALS, JUNE TERM, 1821.

### FORD, et al. vs. PHILPOT, et al.

*A mortgagor is considered the substantial owner of the property mortgaged, and he is capable of transferring or vesting his interest at his own pleasure so long as the right of redemption exists.*

*The interest which a mortgagor had in lands mortgaged by him, was, before the acts of 1795, ch. 56, and 1810, ch. 160, liable to be attached, condemned, and sold under a fieri facias*

*Whether or not in permitting a mortgagor, out of possession, to redeem, he can be compelled to pay, in addition to the mortgage debt, the value of extensive, permanent, and beneficial improvements placed on the land by the mortgagee? Quere.*

APPEAL from the Court of Chancery. The cause, which appears to be sufficiently stated in the opinion delivered by this court, was argued before JOHNSON, MARTIN and DORSEY, J.

*Pinkney* and *Winder*, for the appellants, raised two questions. 1. Had the complainants (now appellants,) a right to redeem a mortgage executed in 1754 under a bill filed in 1809? And, 2. If they had, were they responsible for the improvements made on the premises by the mortgagee, and those claiming under him?

1. They stated, that the chancellor had decreed that the complainants, might redeem on payment of the mortgaged debt, and the value of the improvements made on the premises, as ascertained by the auditor. They contended, that the equity of redemption of the premises could not be affected by the judgment for attachment against *Ford*, (the ancestor of the complainants,) the condemnation and sale under the *fieri facias* thereon. They referred to *Scott vs. Scholey*, 8 *East*, 467. *Metcalf vs. Scholey*, 5 *Bos. & Pull.* 461. *Lyster vs. Dolland*, 1 *Ves. jr.* 431. 1 *Pow. on Mort.* 339. 1 *Madd. Chan.* 418. *Campbell vs. Morris*, 3 *Harr. & M'Hen.* 535; and *Pratt vs. Law & Campbell*, 9 *Cranch*, 478, (Mr. *Key's* argument.) That under the act of 1715, *ch.* 40, *goods and chattels* only could be affected by an attachment. That even if third persons could, under an attachment, affect the mortgaged premises, yet the mortgagor could not, as his remedy was solely in chancery. 1 *Madd. Chan.*